## ELDRIDGE vs. SEE YUP COMPANY.

*Fourth Judicial District Court, July, 1857.*

EJECTMENT—TRUST—IMMORAL USES.

Real estate vested in A, for the use of B, cannot be bound by judgments or claims against A individually.

The power of A over it exists only for the benefit of the *cestui qui trust*.

If the trust fails, or is for immoral purposes, it goes back to the donor or author of the trust.

This was an action of ejectment brought by Eldridge against the See Yup Company, to recover the lot and buildings thereon on Pine street, known as the See Yup Asylum. Both parties claim title under the same deed, which was made in May, 1853, by Gay & Barbour to G. Ah Thai, " in trust for the use of a Chinese church, or place of religious worship and moral instruction," under the rules of the See Yup Company, for whom Ah Thai was then agent. The Company entered on the lot and made improvements to the value of about $40,000. Edward Caney, in 1855, recovered judgment against Ah Thai for an individual debt, levied on the property, sold it, and obtained a Sheriff's deed. Subsequently, Caney sold and conveyed the property to plaintiff, who commenced this action. The defendant, by the agents of the Company, Wan Tin and Ah Chung, answered, setting up the deed from Gay & Barbour to Ah Thai, and alleging that Ah Thai was only agent for the Company, and bought the property *in trust* for them, by funds of the Company.

The case was referred to E. W. Taylor to take the evidence and report a judgment thereon, who, after hearing the proofs, found for the plaintiff.

This motion was made to set aside the report and finding of the Referee, and for judgment in favor of the See Yup Company.

On the trial before the Referee the following evidence was given touching the purpose for which the building is used : The house is used as an asylum for passengers who arrive from China, during their temporary stay here, previous to going to the mines. It is used also for men. who come here from the mines, who belong to the See Yup Com-

pany, to afford them shelter and assistance previous to their departure for China. A room or two of the building are used for idol worship, after the manner of the Chinese faith. The ceremonies are according to the Buddhist religion. The See Yup Company is composed of about 14,000 persons, residing in this State. Women are never admitted in the building or about the premises. There is one large idol in the room, which is worshiped ; the adoration consists in bowing down, offering prayers, burning wood of certain kinds, and paper, and offering sacrifices of meats to the idols. The worship is to the presiding deities of different elements, and to remains of ancestors ; but the principles instilled into the minds of the children are the maxims of Confucius, and are of a religious nature. There is no school of this kind in the See Yup building. About one fourth of the premises is used for idol worship.

Plaintiff contended, 1st. That the deed conveying the land to Ah Thai, created in him an estate *in fee*, being to him, " his heirs and assigns, forever ; " and 2d. That even if the deed might ordinarily have created a trust, yet that such trust, in this instance, being partially for an immoral purpose, (idol worship,) would be void.

*Stow & Brown*, for plaintiff.

*G. B. Tingley*, for defendant.

HAGER, J., held that the property in controversy was vested in Ah Thai for the use of defendants, and his power over it existed only for the benefit of the *cestui qui trust*—and it could not therefore be bound by judgments or claims against him individually. Even if the legal estate be in Ah Thai, a sale of it under judgment and execution against him, cannot divest the beneficiaries of their right to the use and enjoyment of the property. If the trust fails, or is for immoral purposes, as contended by plaintiff, it goes back to the donor, or author of the trust. The *cestui qui trust* being in possession in this case, they cannot be ousted in this action.

Report of Referee set aside.